UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 6:03-CR-72-KKC |
| | ) | |
| WILLIAM C. PERRY, | ) | RECOMMENDED DISPOSITION |
| | ) | |
| Defendant. | ) | |

\*\*\* \*\*\* \*\*\* \*\*\*

The Court, on referral (D.E. 40), considers a reported violation of supervised release conditions by Defendant William C. Perry. This District originally convicted Defendant in November 2004 for being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g). (*See* D.E. 24). Defendant's original sentence was thirty-three months of imprisonment followed by three years of supervised release. Defendant began his first supervised release term on February 23, 2007.

Defendant then committed two violations of the terms of his supervised release. During a final Rule 32.1 hearing on March 12, 2008, Defendant competently entered a knowing, voluntary, and intelligent stipulation to the following violations: (1) controlled substance use (oxycodone); and (2) engaging in unlawful conduct, specifically unlawful possession of oxycodone. (*See* D.E. 36, p. 2).

In turn, on April 8, 2008, the District Court adopted the Recommended Disposition of U.S. Magistrate Judge Robert E. Wier. The Court therefore revoked Defendant's supervised release, imposed a term of fifteen (15) months imprisonment (including access to suitable drug

treatment), and sentenced Defendant to an additional term of supervised release of twenty-one (21) months with no modifications to the terms of supervision, but with advice to the USPO to arrange suitable drug treatment upon commencement of the supervised release term. The Court notes that, after applying the applicable § 3553 factors incorporated into the § 3583(e) analysis, Magistrate Judge Wier recommended, and the Court adopted, a punishment below the U.S. Sentencing Guidelines advisory range of 21-27 months.

Defendant was released from federal custody and placed in state custody pursuant to a detainer. The Kentucky Department of Corrections (KDOC) released Defendant on February 17, 2009, and he began his second term (21 months) of supervised release on that same date. This second term of supervised release was set to expire on November 16, 2010. On September 27, 2010, the United States Probation Office (USPO) issued a Supervised Release Violation Report, and secured a warrant from the District Judge. The Report charges Defendant with violating Standard Condition #7, which provides "[Defendant] shall not purchase, possess, use, distribute, or administer any controlled substance . . . except as prescribed by a physician." Specifically, the Report states that, on September 16, 2010, U.S. Probation Officers Scott Greiwe and Nick Jones obtained a urine specimen from Defendant, which specimen tested positive for oxycodone and propoxyphene through both an instant testing device and subsequent laboratory analysis.

The Report also charges Defendant with violating the condition that Defendant not commit another federal, state or local crime. The report specifically alleges that, under Sixth Circuit precedent,[1] use of a controlled substance in the supervised release context equates to possession of a controlled substance, and that therefore Defendant has engaged in simple possession of a controlled substance, a Class E felony in violation of 18 U.S.C. § 844(a).

---

[1] *United States v. Crace*, 207 F.3d 833, 836 (6th Cir. 2000)

Further, possession of oxycodone is a felony under Kentucky law. *See* Kentucky Revised Statutes (KRS) § 218A.1415

The Court conducted an initial appearance pursuant to Rule 32.1 on October 19, 2010, and set a final hearing following a knowing, voluntary, and intelligent waiver of the right to a preliminary hearing. (D.E. 42). At the initial appearance, the United States made an oral motion for interim detention, to which Defendant objected. (*See id.*). The Court, however, found that detention was required because Defendant did not carry the heavy release burden imposed upon him under Rule 32.1(a)(6) and 18 U.S.C. § 3143(a), and Defendant was therefore detained. (*See id.*).

At the final hearing on October 21, 2010, Defendant was afforded all rights due under Rule 32.1 and 18 U.S.C. § 3583. Defendant competently entered a knowing, voluntary, and intelligent stipulation to the charged violations. Further, for purposes of Rule 32.1 proceedings, Defendant admitted the factual basis for the violations as described in the Report. In the Supervised Release context, the Sixth Circuit treats controlled substance use as equivalent to possession. *See United States v. Crace*, 207 F.3d 833, 836 (6th Cir. 2000). The United States thus established both violations under the standard of § 3583(e).

The Court has evaluated the entire record, including the recent Supervised Release Violation Report and accompanying documents, the sentencing materials from the underlying Judgment in this District, and the complete record concerning the previous violations committed by Defendant. Additionally, the Court has considered all of the § 3553 factors imported into the § 3583(e) analysis. Under § 3583(e)(3), a defendant's maximum penalty for a supervised release violation hinges on the gravity of the underlying offense of conviction. Defendant's § 922(g) conviction was for a Class C felony. *See* 18 U.S.C. § 371; 18 U.S.C. § 3559. For a Class C

felony, the maximum revocation sentence provided under § 3583 is two (2) years of imprisonment. *See* 18 U.S.C. § 3583(e)(3). The Policy Statements in Chapter 7 of the Guidelines provide advisory imprisonment ranges for revocation premised on criminal history (at the time of original sentencing) and the "grade" of the particular violation proven. *See United States v. Perez-Arellano*, 212 F. App'x. 436, 438-439 (6th Cir. 2007) ("Although the policy statements found in Chapter Seven of the United States Sentencing Guidelines recommend ranges of imprisonment, U.S.S.G. § 7B1.4, such statements 'are merely advisory' and need only be considered by the district court before sentence is imposed.") (citation omitted). Under § 7B1.1, Defendant's admitted conduct would qualify as a Grade B violation because it encompasses a state felony, per KRS § 218A.1415.[2] Given Defendant's criminal history category of VI (the category at the time of the conviction in this District) and the most serious violation grade of B, Defendant's range, under the Revocation Table of Chapter 7, is 21-27 months.

A court may also reimpose supervised release, following revocation, for a maximum period that usually subtracts any term of incarceration actually imposed due to the violation. *See* 18 U.S.C. § 3583(b) & (h). The post-revocation cap depends on the "term of supervised release authorized by statute for the offense that resulted in the original term of supervised release." *See* 18 U.S.C. § 3583(h). The general supervision-term limits of § 3583(b) apply "[e]xcept as otherwise provided." *See id.* § 3583(b). Given the underlying offense, and the prior 15-month incarceration imposed upon revocation, the maximum supervised release at this point would be

---

[2] The Sixth Circuit treats controlled substance use as equivalent to possession, in the supervised release context. *See United States v. Crace*, 207 F.3d 833, 836 (6th Cir. 2000). Possession of oxycodone would be a state felony. S*ee* KRS § 218A.1415 (making a felony of possession, as relevant, of a Schedule II narcotic, which encompasses oxycodone).

21 months (36 minus 15), less any incarceration term imposed at this point. *See United States v. Bowery*, No. 6:06-113, 2009 WL 259812, * 2 (E.D. Ky. Feb. 2, 2009).

At the hearing, the United States sought revocation and the maximum period of incarceration of 24 months, which would eliminate the possibility of supervised release thereafter given the discussion immediately above. Defendant sought nearly no penalty at all, taking the position that because the violations were essentially honest mistakes, Defendant should be sentenced to time served and allowed to have his supervised release expire on November 16, 2010, as originally scheduled. Thus, the parties presented the Court with vastly different views of this matter.

Congress does *mandate* revocation in a case of this nature. By statute, the Court must revoke Defendant's release because he "possessed" a controlled substance. *See* 18 U.S.C. § 3583(g)(1); *see also Crace*, 207 F.3d at 836 (equating use with possession). The Sixth Circuit clearly and repeatedly has equated drug use with drug possession, and Collins's admitted use in this context undoubtedly results in application of § 3583(g)(1). *See United States v. Metcalf*, 292 F. App'x 447, 450 n.2 (6th Cir. 2008) ("Mandatory revocation was . . . warranted under § 3583(g)(1), as we have held that use of a controlled substance constitutes possession under that subsection."). The only exception would be if a suitable treatment option, or Collins's record of involvement in treatment, warranted relief. *See* 18 U.S.C. § 3583(d); *Crace*, 207 F.3d at 835 (holding district court "required by 18 U.S.C. § 3583(g) to revoke the defendant's term of supervised release upon the defendant's positive drug test and admission of the use of a controlled substance unless defendant could come under the exception in 18 U.S.C. § 3583(d)"). The Court previously found that "no alternative to revocation reasonably exists," (D.E. 36, p. 4), and that conclusion remains valid.

The Court has carefully weighed the nature and circumstances of the offense, as well as Defendant's particular history and characteristics. The appropriate starting point for this analysis is Magistrate Judge Wier's observation in his prior revocation recommendation that Defendant has "apparently not been a repeat violator" of either state probation or federal supervised release. *See* D.E. 36, p. 4, adopted as the Opinion of the Court at D.E. 38, p. 1 (footnote omitted). Defendant's actions which led to the instant proceeding have, however, earned him that designation. With a criminal history category of VI—the highest under the Sentencing Guidelines—Defendant's history reflects a long and repeated tendency toward crime and resistance to correction and legal duties. The Court has taken this troubling history into account as required by § 3553.

As to the nature and circumstances of the offense, Defendant stated—under oath—that his use of both oxycodone and propoxyphene was for the treatment of his significant back pain. Specifically, Defendant suffered a serious work-related back injury in March of this year, which was described as "a herniation at the L3-L4."[3] Defendant obtained a prescription on March 1, 2010, for oxycodone, with direction to take one tablet by mouth every six to eight hours if needed. The prescribed quantity was 120. The Court notes that Probation Officer Greiwe confirmed the accuracy of this description of that prescription. Defendant explained that he took that prescribed medication as needed following his injury, but did not take all 120 and therefore had some leftover pills at the time of the current violations. Defendant further explained that, apparently unbeknownst to him, these leftover pills and other pills prescribed to his wife were placed in a single bottle. Defendant stated that the current violations occurred when he intended

---

[3] The Court notes that Defendant did appear to be very uncomfortable due to this back injury during the final hearing.

6

to take two of the leftover oxycodone for his back pain, but instead took one of those oxycodone tablets and one of his wife's pills (explaining the positive test for propoxyphene).[4]

The Court does not countenance Defendant's behavior. Prescriptions are to be strictly followed (*see* KRS Chapter 218A), and Defendant's prescription for oxycodone had apparently expired. If Defendant needed an additional prescription for his back pain, he should have sought to obtain one. Nor should the pills have been placed in a community container. *See* KRS 218.210. Nevertheless, the Court finds Defendant's explanation to be plausible, and reflective of conduct that, although in violation of the conditions of Defendant's release, is certainly less serious than someone abusing controlled substances obtained on the street or otherwise unlawfully. Defendant appeared to be in pain during the final hearing, seemed sincere in his description of the conduct underlying these violations, and the Court is sympathetic to the need to treat his pain. The Court is not, however, forgiving of doing so in a manner that violates the conditions of Defendant's supervised release.

The Guidelines suggest that the *primary* wrong in the supervised release context is violation of the Court's trust by an offender; the particular conduct is an important but secondary issue. *See* Guidelines 7 Pt. A(3)(b) ("[A]t revocation the court should sanction primarily the defendant's breach of trust, while taking into account, to a limited degree, the seriousness of the underlying violation and the criminal history of the violator."). Despite significant hesitation, the Court finds Defendant's explanation of the violations to be plausible. Contrary to Defendant's previous violations and revocation, the record demonstrates compliance with conditions of release beginning with Defendant's release from the custody of KDOC on February 17, 2009, through September 16, 2010. This period of time included significant

---
[4] The Court notes that propoxyphene is typically prescribed to treat mild to moderate pain.

supervision, including drug testing, by the USPO. During that time, Defendant has apparently obtained and maintained (to the best of his ability despite his significant injury), gainful employment.[5] To be clear, Defendant has violated the trust placed in him by committing the current violations. Defendant's explanation reflects a somewhat careless violation instead of one resulting from substance abuse. This violation of trust does not warrant a severe punishment as suggested by the United States.

The Court is troubled by this most recent violation. Defendant should have been more careful with his prescription medications, and must be more careful at all times in the future. A term of imprisonment is therefore warranted as a consequence of the violation and breach of trust committed by Defendant, to deter further criminality, and to protect the public. A term of imprisonment of 28 days, which, according to the Court's calculations, will expire on November 16, 2010, is sufficient, but not greater than necessary, under § 3553.[6]

It should be clear that the Court views all violations of the terms of release as serious. This was certainly made clear to Defendant at the October 21, 2010, hearing. Indeed, Defendant's criminal history nearly eliminates any possibility of anything but a lengthy prison sentence. Future violations will, without any question whatsoever, result in such a lengthy sentence. Defendant has the power to avoid such a result by perfect compliance with all conditions of release.

---

[5] The Court notes that the September 27, 2010, Supervised Violation Report suggests that Defendant failed to participate in certain substance abuse counseling following his release in February 2009. However, during the hearing, USPO Greiwe clarified this suggestion and explained that this was essentially a non-issue because he felt Defendant's employment interfered with the ability to undertake that counseling. The USPO therefore essentially excused this non-compliance so as to allow Defendant to keep his job. Thus, although this suggestion is in the Report, it is not being considered as "history or characteristics" factor weighing against Defendant.

[6] Defendant was arrested on October 19, 2010, and second term of supervised release was set to expire on November 16, 2010.

The parties presented argument as to whether an additional term of supervised release would benefit Defendant. The Court finds that additional supervision is required to monitor Defendant's return to society. The Court therefore recommends an additional period of supervised release of six (6) months. The Court notes that future violations of the conditions of this period of supervised release will likely result in additional sentences, including additional periods of imprisonment. Defendant still has the ability and opportunity to change the course of his life and make decisions that avoid future trouble. Part of that appropriate course must include strict compliance with *all* conditions of supervised release in the future.

The Court recommends, based on the violations found:

1. Revocation and incarceration for a term of 28 days, including credit for time served thus far, which period of incarceration shall expire on November 16, 2010; and

2. An additional supervised release term of six (6) months. The conditions of supervised release should be the same as those originally imposed by the Court's judgment dated October 27, 2004.

The Court acknowledges that this recommendation is below the advisory range of Chapter 7, which called for 21-27 months (subject to the 24 month statutory maximum). After consideration of the entirety of Chapter 7, and applying the binding statutory factors in § 3553, the Court views the recommended sentence as sufficient but not greater than necessary to effectuate and comply with the statute's purposes. The punishment is real and calculated to yield both protection and deterrence while offering Perry suitable post-incarceration oversight.

Defendant's right of allocution under Rule 32.1 is preserved, as reflected in the record. Any waiver should comport with the Court's standard waiver form, available from the Clerk.

The Court directs the parties to 28 U.S.C. § 636(b)(1) for appeal rights concerning this recommendation, issued under subsection (B) of the statute. *See also* 18 U.S.C. § 3401(i). As defined by § 636(b)(1), within fourteen days after being served with a copy of this recommended decision, any party may serve and file written objections to any or all portions for consideration, de novo, by the District Court. Failure to make timely objection consistent with the statute and rule may, and normally will, result in waiver of further appeal to or review by the District Court and Court of Appeals. *See United States v. Walters*, 638 F.2d 947, 950 (6th Cir. 1981); *Thomas v. Arn*, 106 S. Ct. 466 (1985).

This the 1st day of November, 2010.

Signed By:
*Hanly A. Ingram*
United States Magistrate Judge